# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LISA BURGESS | : | |
| | : | |
| v. | : | Civil No. CCB-12-3590 |
| | : | |
| HOWARD COUNTY POLICE DEPARTMENT | : | |
| | : | |

## MEMORANDUM

Plaintiff Lisa Burgess, a former police officer with the Howard County Police Department, filed this action alleging discriminatory treatment based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Howard County has moved to dismiss Burgess's complaint for failure to state a claim. For the reasons stated below, the county's motion will be granted.

## BACKGROUND

Lisa Burgess, an African American, was employed as a police officer by the Howard County Police Department from April 2003 until sometime in 2013,[1] and was the only African American on her squad. (Am. Compl., ECF No. 14, ¶¶ 1-2; Pl.'s Opp'n, ECF No. 19, at 4). Burgess began receiving negative evaluations from Jennifer Reidy-Hall in October 2010, when Reidy-Hall became her supervisor. (Am. Compl. ¶¶ 10, 12; *Pl.*'s Opp'n, at 3). According to Burgess's complaint, Reidy-Hall began a "repeated pattern" of including "false, misleading, and exaggerated statements" in her reviews of Burgess. (Am. Compl. ¶¶ 12, 15). Burgess also

---

[1] It is unclear if or when Burgess stopped working for the police department, but her memorandum in opposition to Howard County's motion to dismiss seems to indicate that she was terminated at some point between the time when she filed her amended complaint and her opposition to the motion to dismiss. (*See* Pl.'s Opp'n, ECF No. 19, at 4).

1

alleges that she was reviewed using improper criteria, namely that she was given negative evaluations based on her monthly arrest and traffic ticket numbers. (*Id.* ¶ 14). Burgess claims that "by all accounts, [she] was performing satisfactorily in her duties as a police officer" prior to the time Reidy-Hall became her supervisor, and, as evidence of her good performance, she points to an October 2009 email from her captain, Captain Daniel Coon. (Am. Compl. ¶¶ 3, 4; Am. Compl. Ex. 4, ECF No. 14-1). In commenting on a recent performance evaluation Burgess had received from her then-supervisor, Lieutenant Brennan, Captain Coon notes she had done "excellent police work" in a number of cases, but still needed to "focus on the areas identified . . . for improvement." (Am. Compl. Ex. 4).

After receiving an "unsatisfactory evaluation" on her annual review in January 2011, conducted by Reidy-Hall and a Lieutenant Myers, Burgess was placed on bimonthly review status by a Major Gardner. (Am. Compl. ¶ 11; Compl. Ex. 1, ECF No. 1-1, at 2).[2] In addition, she and Reidy-Hall outlined eight goals for Burgess in a "Memorandum of Agreement of Expectations/Goals for Police Officers Annual Performance Review." (Compl. Ex. 1, at 2). After receiving a number of "standard" ratings from Reidy-Hall in various categories in her first bimonthly evaluation, several of those ratings dropped back to "below standard" or "unsatisfactory" in the second evaluation, which Burgess attached as an exhibit to her initial complaint ("the March-May evaluation"). (Compl. Ex. 1; Compl. Ex. 2, ECF No. 1-2). Captain Coon also sent Burgess an email after reviewing the March-May evaluation informing her that he had discussed the evaluation at length with not only Reidy-Hall, but also Lieutenant Denton,

---

[2] Burgess attached exhibits 1, 2, and 3 to her initial complaint but not to her amended complaint. "As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (internal citations omitted). The court can consider the attachments to the initial complaint here, however, because they were integral to and explicitly relied on in the amended complaint. *See Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

2

another of Burgess's supervisors, and that after reviewing the "very thorough and detailed" supporting documentation, he found it "more than sufficient to support the ratings." (Def.'s Mot. Ex. 1, ECF No. 16-1).[3]

Burgess claims that she received negative evaluations because Reidy-Hall was discriminating against her based on her race, and that as a result of being placed on bimonthly review status, she did not receive due promotions or pay increases. (Am. Compl. ¶¶ 10-11, 18, 20-21). She also claims that the bimonthly reviews constitute harassment. (*Id.* ¶ 18). Burgess filed a complaint with the Equal Employment Opportunity Commission in June 2011 and received a right to sue notice in September 2012. (*Id.* ¶¶ 16-17; Compl. Ex. 3, ECF No. 1-3). After filing suit under Title VII, her initial complaint was dismissed without prejudice for failure to state a claim. She filed her amended complaint in May 2013.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition

---

[3] "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)). Here, Burgess attached her response to Coon's email as an exhibit to her amended complaint, (Am. Compl. Ex. 6, ECF No. 14-3), and relies on Coon's evaluations of her to support her claims (Am. Compl. ¶4; Am. Compl. Ex. 4). Even if consideration of the email did convert the motion into one for summary judgment, the court could still consider the merits of the motion today, as the parties had notice that the court may do so and did not indicate through a Rule 56(d) affidavit that they needed additional discovery. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, --- F.3d ----, 2013 WL 3336884, at *10 (4th Cir. 2013); *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998).

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### I.  Disparate Treatment

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). In order to state a prima facie claim of discrimination under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

The court construes Burgess's complaint to allege that the adverse employment action to which she was subjected was being placed on a bimonthly review status after receiving a negative annual evaluation, as Burgess claims it barred her from receiving promotions and pay increases. While it appears likely that it barred her from receiving pay increases and the defendant does not dispute that it did, Burgess has alleged no facts to show it barred her from receiving promotions for which she was eligible, even though such information would presumably be within her knowledge. The court will thus consider the adverse employment action at issue to be the denial of pay raises as a result of Burgess's placement on bimonthly review status.[4] *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) ("[A] poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." (internal quotation marks and citation omitted)).

Construing her complaint in this way, Burgess has failed to state a claim because she has not plausibly alleged that her job performance at the time she was placed on bimonthly review status was satisfactory or that similarly situated employees outside her protected class were treated differently. Burgess does not allege any facts to make a plausible claim that she was performing her job to the satisfaction of the police department at the time she was placed on bimonthly review status, in January 2011. Burgess's claim that, prior to October 2010, she was, "by all accounts," performing satisfactorily is conclusory. (Am. Compl. ¶ 3). Further, even

---

[4] Burgess also at times appears to allege in her complaint that, independently from being placed on bimonthly review status, she was denied raises and promotions and received improper or negative evaluations. (Am. Compl. ¶¶ 7, 14-15, 18, 20). Negative evaluations alone are not actionable under Title VII, *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004), and, Burgess does not allege any facts to support claims that she was independently denied promotions and pay raises, *see, e.g.*, *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (noting that to support a failure to promote claim, a plaintiff must show that "there was a specific position for which she applied, . . . she was qualified for that position, and [the employer] rejected her under circumstances giving rise to an inference of discrimination").

though Captain Coon offered her some praise in his October 2009 email, his remarks were qualified as he noted that she still needed to improve in areas. (Am. Compl. Ex. 4). In his email concerning the March-May evaluation in 2011, he pointed out that there were still "a number of performance issues that need[ed] to be improved . . . and have been a persistent issue over prior evaluation periods." (Def.'s Mot. Ex. 1). Thus, Captain Coon's 2009 remarks, when considered with its qualifications and his later statements, are not enough to support a plausible claim that Burgess was performing satisfactorily.

The monthly reports documenting Burgess's arrest and traffic stop numbers for the months of January 2010 through August 2010 and again for January 2011 through May 2011 also do not support a plausible claim that she was satisfactorily performing her duties. (Am. Compl. Ex. 5, ECF No. 14-2). Burgess claims the reports demonstrate she was "about average" and "certainly not the lowest performing member of [her] platoon." (Am. Compl. ¶¶ 5-6). The March-May evaluation demonstrates, however, that the Howard County Police Department has expectations of its officers beyond just specific arrest and traffic stop numbers, and it describes those expectations in detail. Comparing her performance to other officers in just some of the areas upon which she was evaluated is, therefore, not enough to support a claim that Burgess was meeting her employer's expectations.

In fact, the content of the March-May evaluation makes it implausible that Burgess was meeting the legitimate expectations of her employer when she was placed on bimonthly review status, or afterward, when she continued to be reviewed on a bimonthly basis. It first notes that she received "below standard" ratings in several areas on her annual review, which provided the basis for changing her review status. (Compl. Ex.1, at 2; Compl. Ex. 2, at 2). The evaluation

shows she continued to perform at "below standard" or "unsatisfactory" levels even after being placed on bimonthly review status, and includes detailed descriptions of the ways in which her performance fell short. (Compl. Ex. 1, at 2, 6-7, 9, 11, 13). Burgess claims that the statements in her performance evaluations are misleading, false, or exaggerated, and that they are the result of Reidy-Hall's discrimination, (Am. Compl. ¶¶ 12, 15, 18, 20), but she does not allege any facts to support her claims such that the evaluations should be disregarded. Instead, facts alleged in her complaint show that her performance evaluations were the result of more than just Reidy-Hall's own review of Burgess, as more supervisors than just Reidy-Hall reviewed and approved them. (Compl. Ex. 1, at 2, 18; Def.'s Mot. Ex. 1). Even Captain Coon, whose 2009 praise Burgess relies on heavily to show she was meeting her employer's expectations, found that the 2011 negative evaluations were sufficiently supported by documentation and thorough review. (Def.'s Mot. Ex. 1). Further, even after her supervisors revised the evaluation based on some disagreements Burgess had, she still was rated at "below standard" and "unsatisfactory" in a number of categories. (Compl. Ex. 2; Def.'s Mot. Ex. 1). Burgess's critiques of the evaluations appear to only arise from subjective disagreements over the sufficiency of her performance. (Am. Compl. ¶ 6; Am. Compl. Ex. 6). Without any other alleged facts, such disagreements are insufficient to establish that she was meeting the police department's legitimate expectations. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff").

Burgess has also failed to allege sufficient facts that similarly situated individuals were treated differently. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were]

7

subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).[5] Nor has she pled any other circumstance that would give "rise to an inference of unlawful discrimination." *Bryant v. Aiken Regional Medical Centers, Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) (internal quotation marks and citation omitted). She only claims that white officers "were consistently making fewer arrests and conducting fewer traffic stops" but were treated more favorably, pointing specifically to two unidentified white officers who "objectively performed below the plaintiff's standards." (Am. Compl. ¶¶ 7-8). Based on the several different criteria upon which Burgess was evaluated, (Compl. Ex. 1), it is clear another officer's traffic and arrest numbers are insufficient to establish that he was similarly situated. Further, her claims that any officer may have been treated more favorably are conclusory. There is no indication that Burgess's supervisors treated any officer differently; any difference in treatment appears to only be the result of Burgess's performance. Accordingly, Burgess's disparate treatment claim must be dismissed.

## II. Hostile Work Environment

To establish a hostile work environment claim under Title VII,[6] a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and (5) some factual basis exists to impute

---

[5] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.
[6] It is unclear whether Burgess intended to allege hostile work environment in her complaint, given that her allegations do not extend beyond general claims that her supervisors harassed her by placing her on bimonthly review status and giving her negative reviews. The court nevertheless addresses it here in case she did intend to make the claim.

liability for the harassment to the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001) (setting out the elements of a racially hostile work environment claim). A plaintiff must show not only that she subjectively believed her workplace environment was hostile, but also that a reasonable person could perceive it to be objectively hostile. *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To determine whether a reasonable person would perceive workplace conduct to be severe and pervasive, the court considers a number of factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks and citation omitted).

To support her hostile work environment claim, Burgess only alleges that her employer "generally harassed" her by subjecting her to bimonthly reviews and including alleged falsehoods in those reviews. (Am. Compl. ¶¶18, 22). This is far from sufficient to state a plausible claim for relief. Discrete and isolated personnel decisions do not rise to the level of a hostile work environment. *Pueschel v. Peters,* 577 F.3d 558, 566 (4th Cir.2009). Placing Burgess on a bimonthly review status and giving her negative evaluations are personnel decisions. *See Rock v. McHugh*, 819 F. Supp. 2d 456, 471-72 (D. Md. 2011) (characterizing the decision to provide a performance review as a discrete personnel decision). She has not made any allegations that she was subject to humiliation, threats, or offensive utterances based on her race, or otherwise subjected to treatment that unreasonably interfered with her work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting that for harassment to be sufficiently severe or pervasive, the workplace must be "permeated with discriminatory

9

intimidation, ridicule, and insult" (internal quotation marks and citation omitted)).  Any claim Burgess is attempting to make of a hostile work environment, therefore, must be dismissed.

## CONCLUSION

For the reasons stated above, the Howard County Police Department's motion to dismiss will be granted, and Ms. Burgess's complaint will be dismissed.

A separate order follows.


<u>September 30, 2013</u>                                          <u>        /s/        </u>
Date                                                                        Catherine C. Blake
                                                                            United States District Judge